UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JEAN M. SHELLEY,

                                 Plaintiff,      **No. 6:16-cv-06360-MAT**

                                                        **DECISION AND ORDER**

           -vs-

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

                                 Defendant.

---

## I. Introduction

Represented by counsel, Jean M. Shelley ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security[1] ("Defendant" or "the Commissioner") denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). For the reasons set forth below, the Commissioner's decision is reversed, and the matter is remanded for further administrative proceedings..

## II. Procedural History

On October 3, 2012, Plaintiff protectively filed applications for DIB and SSI alleging disability beginning January 21, 2008, due to lumbar disc problems, migraines, high cholesterol, complications

---

[1] Nancy A. Berryhill replaced Carolyn W. Colvin as Acting Commissioner of Social Security on January 23, 2017. The Clerk of the Court is instructed to amend the caption of this case pursuant to Federal Rule of Civil Procedure 25(d) to reflect the substitution of Acting Commissioner Berryhill as the defendant in this matter.

from a possible stroke, anxiety, and gastroesophageal reflux disease ("GERD"). (T.54-79, 150-57).[2] Plaintiff's applications were denied on May 9, 2013, and she timely requested a hearing before an administrative law judge ("ALJ"). (T.94-95). ALJ Marie Greener held a hearing on September 15, 2014. (T.33-53). On November 28, 2014, ALJ Greener issued a decision in which she found Plaintiff was not disabled as defined in the Act. (T.17-31). On March 25, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T.1-6). This timely action followed.

Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, Plaintiff's motion is granted, and the Commissioner's motion is denied.

**III. The ALJ's Decision**

Initially, the ALJ found that Plaintiff met the insured status requirements of the Act through September 30, 2014. (T.220). At step one of the five-step sequential evaluation, *see* 20 C.F.R. §§ 404.1520, 416.920, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 21, 2008, the alleged onset date. (*Id*.). At step two, the ALJ found that Plaintiff had the severe impairments of cervical spinal and lumbar spinal

---

[2] Citations to "T." in parentheses refer to pages in the certified copy of the administrative transcript.

2

degenerative disc disease with herniated nucleus pulposus. (*Id*.). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (T.23-24).

Before proceeding to step four, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform the full range of sedentary work as defined in 20 CFR §§ 404.1567(a) and 416.967(a), with the ability to lift/carry 10 pounds occasionally and less than 10 pounds frequently; to sit 6 hours in a routine 8-hour workday; and to stand/walk 2 hours total in a routine 8-hour workday. (T.24-27).

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (T.26). At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, that jobs exist in significant numbers in the national economy that Plaintiff can perform. (T.26). Accordingly, the ALJ found that Plaintiff was not disabled. (T.27).

**IV. Scope of Review**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Shaw v.*

3

*Chater*, 221 F.3d 126, 131 (2d Cir. 2000). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

**V. Discussion**

Plaintiff makes the following arguments in support of her motion for judgment on the pleadings: (1) the ALJ failed to properly consider Plaintiff's migraines and headaches at step two; (2) the ALJ's RFC determination is not supported by substantial evidence because (a) the ALJ failed to correctly weigh treating physician Dr. Alves' opinion, and failed to reconcile certain limitations in consultative physician Dr. Persaud's opinion with the RFC assessment; and (3) the ALJ's step five determination is not supported by substantial evidence.

**A. The ALJ's Step Two Finding**

Plaintiff argues that the ALJ erred in failing to properly consider her migraines and headaches at Step Two resulting in the ALJ finding them non-severe. (Docket No. 9 at 10-13). Specifically, Plaintiff contends, the ALJ failed to discuss her treatment records beyond Exhibit 1F. (*Id.*). The Commissioner contends that Plaintiff did not demonstrate that her headaches were severe and the medical evidence does not support that finding. (Docket No. 12 at 12). The Commissioner also points out that the ALJ correctly cited to Plaintiff's office treatment records with

4

Dr. Olga McAbee which explain that her migraines are resolving well with medication. (Docket No. 12 at 12 (citing T.22, 265)).

At step two of the sequential evaluation process, an ALJ must determine if a claimant has a medically determinable impairment and whether that impairment is "severe" such that it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). "The phrase 'significantly limits' is not synonymous with 'disability.' Rather, it serves to 'screen out *de minimis* claims.'" *Showers v. Colvin*, No. 3:13-CV-1147(GLS), 2015 WL 1383819, at *4 (N.D.N.Y. Mar. 25, 2015) (quoting *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995)). Thus, "[a] finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality'. . .[with]. . .'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel*, No. 97 CV 5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999) (quoting *Bowen v. Yuckert*, 482 U.S. 137, 154 n.12 (1987)).

Here, the ALJ found that Plaintiff's "migraines with aura" "have resolved quite well with use of Inderal, so that she has now been reported headache-free (Exhibit 1F)." (T.22). The ALJ further noted that Plaintiff "underwent an occipital nerve block for tension headaches in July 2013 (exhibit 8F p38)." (T.23). The ALJ found Plaintiff's headaches and migraines to be non-severe. (T.22).

5

The ALJ cited to Exhibit 1F which includes neurology treatment records from Dr. McAbee dated September to November 2012. (T.263-70). Dr. McAbee prescribed Inderal in October 2012, and Plaintiff reported being headache-free on Inderal in November 2012. (T.265-66). However, the record includes further neurology treatment notes[3] regarding Plaintiff's migraines and headaches, to which the ALJ did not refer or cite in finding these impairments non-severe. For instance, in March 2013, Plaintiff continued with frequent tension headaches in addition to neck and shoulder pains. (T.281). In June 2013, Plaintiff reported frequent tension headaches usually arising from the back of the head. (T.347). Dr. Segal diagnosed Plaintiff with chronic tension headaches and neck pain with a component of occipital neuralgia and medication overuse/rebound headaches. (T.350). Dr. Segal recommended decreased intake of Tylenol and Oxycodone and great occipital nerve blocks bilaterally. He prescribed Imitrex for her migraines and recommended application of moist heat to paracervical and suboccipital muscles. (T.350).

In July 2013, Plaintiff underwent a trial of right greater occipital nerve block. (T.340-43). Even though she had decreased her Tylenol and Oxycodone intake, as recommended by Dr. Segal, she

---

[3] At the hearing, Plaintiff's attorney questioned Plaintiff regarding her treatment with Dr. Segal including nerve blocks, the ALJ failed to mention Dr. Segal in the discussion and did not summarize any of Plaintiff's additional treatment for her migraines and headaches in 2013 and 2014. (T.22-26, 45-47; Exhibit 4F (T.281-83); Exhibit 8F (T.312-16, 330-34, 340-43, 347-50, 359-61).

continued to have almost daily tension headaches, usually starting at the right suboccipital region. (T.340). She had tried heating and cool pack with no relief. (*Id.*).

In September 2013, Dr. Segal recommended cutting down on caffeine consumption as well as continuing with moist heat to right occipital region and Naproxen as needed for suboccipital headaches, taken together with Imitrex to prevent development of a migraine. (T.332). Dr. Segal indicated she might benefit from another nerve block.

In January 2014, Plaintiff reported to Dr. Segal that the Imitrex was working well and she tolerated prophylactic therapy with Inderal well. She still was having an average of one to three migraines per month along with mild bilateral suboccipital tenderness. (T.313-16). At the hearing, Plaintiff testified that medications have reduced her migraines, but she still has pain every day despite taking medications daily. (T.47-48).

Contrary to the ALJ's suggestion, Plaintiff has not been "headache free" and has continued to suffer from migraines and tension headaches that had more than a "minimal" impact upon her daily functioning. The ALJ therefore erred in failing to capture these limitations in the RFC. *See Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012) ("[A]fter finding that [the claimant]'s mental impairment of depression does not cause more than minimal limitation in . . . [Plaintiff's] ability to perform basic mental work activities and is therefore nonsevere, the ALJ determined

7

[Plaintiff]'s RFC without accounting for any of the limitations arising from her mental impairment. . . . Thus, the ALJ committed legal error.") (second alteration in original and internal quotation marks omitted); *Jackson v. Colvin*, 2016 WL 1578748, at *4 (W.D.N.Y. Apr. 20, 2016) (regardless of whether that particular impairment is found to be severe or non-severe, the ALJ must "consider all of plaintiff's impairments, both severe and non-severe, when reaching an RFC determination") (citing 20 C.F.R. § 404.1545(a)(2)). Remand accordingly is required for the ALJ to consider all of the relevant records relating to Plaintiff's treatment for migraine headaches and consider the "combined impact of [Plaintiff's medically-determinable] impairments . . . throughout the disability determination process." 20 C.F.R. § 404.1523; *see, e.g.*, *Ames v. Berryhill*, No. 16-CV-316-FPG, 2017 WL 1276706, at *3 (W.D.N.Y. Apr. 6, 2017) ("[T]his Court finds that the ALJ did not err when he found those impairments to be nonsevere. Despite this finding, however, remand is still required because the ALJ failed to account for Ames's gastrointestinal impairments when determining her RFC." (citing *Parker-Grose*, 462 F. App'x. at 18)).

**B. The ALJ's RFC Finding**

Plaintiff argues that the ALJ's RFC finding is not supported by substantial evidence. (Docket No. 9 at 13). Specifically, Plaintiff argues that the ALJ failed to properly weigh the treating physician opinion of Dr. John Alves and failed to reconcile the

8

opinion of consultative physician Dr. Look Persaud with the final RFC determination. (Docket No. 9 at 14-16). The Commissioner contends that the ALJ properly afforded little weight to Dr. Alves's assessment and that ALJ was not required to accept Dr. Persaud's "moderate" restrictions on Plaintiff's ability to kneel and crawl. (Docket No. 12 at 15).

    **1.  Dr. Alves' Opinion**

The treating physician rule requires an ALJ to give controlling weight to a treating physician's opinion when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); *see also Green-Younger*, 335 F.3d at 106. However, an ALJ may give less than controlling weight to a treating physician's opinion if it does not meet this standard, so long as the ALJ sets forth the reasons for the determination. *See Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion.").

Dr. John Alves, Plaintiff's primary care physician since 2012, completed a series of RFC questionnaires in December 2012, October 2013, and August 2014. In October 2013 (T.303-04), for instance, Dr. Alves indicated that he saw Plaintiff bi-monthly for her chronic lower back pain and opined her symptoms were often severe

9

enough to interfere with the attention and concentration required to perform simple work-related tasks; her medication side-effects included drowsiness and dizziness. (T.303). Dr. Alves opined that Plaintiff would need to recline or lie down in excess of traditional breaks during a hypothetical 8-hour workday; she could walk one city block without rest or significant pain; she could sit for 20 minutes at a time for a total of four hours; she could stand/walk for 10 minutes at a time for a total of one hour; she would need a job permitting shifting positions at will; she would need to take unscheduled breaks hourly lasting 15 to 20 minutes; she could occasionally lift up to 10 pounds; and she would likely be absent from work more than four times a month. Dr. Alves' RFC questionnaires from December 2012, and August 2014 (T.400-01), were largely consistent with the October 2013 questionnaire.

The ALJ assigned all of the these opinions from Dr. Alves "little weight." According to the ALJ, Dr. Alves never documented any back/spinal examination; never referred her to a specialist; and completed the December 2012, and October 2013, medical source statements prior to ordering any imaging. (T.25). The Court notes that the Commissioner does not argue that these reasons offered by the ALJ are "good reasons" but instead contends that the opinion were "simply check box/fill in the blanks forms provided by Plaintiff's attorney," and the opinion regarding Plaintiff's inability to work an eight-hour day for five days a week was an opinion on the ultimate determination of disability reserved to the

10

Commissioner. Since neither of these reasons were relied on by the ALJ, the Court likewise cannot rely on them to determine the correctness of the ALJ's decision. *See Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) ("A reviewing court may not accept appellate counsel's *post hoc* rationalizations for agency action.") (quotation marks and citation omitted); *Goble v. Colvin*, No. 15-CV-6302 CJS, 2016 WL 3179901, at *4 (W.D.N.Y. June 8, 2016) ("[W]hile the Commissioner has cited a number of specific instances in which she believes that [the treating physician]'s opinion conflicts with his office notes and other medical records, and while she maintains that [the treating physician] is not a specialist in mental health, those are not reasons that the ALJ gave in his decision for affording little weight to [the treating physician]'s opinion. Accordingly, the Court may not rely on those *post hoc* arguments when considering whether the ALJ complied with the treating physician rule."). In any event, the ALJ's statement that Dr. Alves never performed a spinal examination is incorrect. On February, 10, 2014, for instance, Dr. Alves noted that on examination, Plaintiff had decreased range of motion in back flexion, as well as pain upon range of motion in back flexion, extension, and lateral flexion. (T.309). Reasons for rejecting a treating source's opinion that misstate the record cannot be "good reasons" for purposes of the treating physician rule. *See*, *e.g.*, *Harris v. Colvin*, 149 F. Supp.3d 435, 447 (W.D.N.Y. 2016) (ALJ's reasons for assigning less than controlling weight to treating

psychiatrist's opinion were not "good reasons" where ALJ "repeatedly mischaracterized the evidence, selectively quoted the record, and applied incorrect legal standards") (citation omitted).

The ALJ also discounted Dr. Alves' opinions because Plaintiff allegedly "never once complained to her treating physician of any problems sitting." (T.25). While Plaintiff might not have specifically referenced "sitting" when she saw Dr. Alves, she reported her pain was "chronic," was located in her lower back, and *worsened* with *any activity*. Dr. Alves also stated that Plaintiff's back pain presented a "chronic problem," and that she experienced "essentially chronic pain." (T.309). Logically, if Plaintiff was having chronic pain that worsened with any activity, it means that she still had pain with inactivity, i.e., while she was sitting or lying down. The ALJ cherry-picked from the record to justify his rejection of Dr. Alves' opinions, which was improper. *See Nix v. Astrue*, No. 07-CV-344, 2009 WL 3429616, at *6 (W.D.N.Y. Oct. 22, 2009) ("It is a fundamental tenet of Social Security law that an ALJ cannot pick and choose only parts of a medical opinion that support his determination."). As the Second Circuit has explained, "[t]he ALJ was required either to give . . . [the treating physician's] opinions controlling weight or to provide good reasons for discounting them." *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010). Here, the Court finds that the ALJ did not provide "good reasons" for discounting Dr. Alves' opinions, gleaned over several years of regularly seeing Plaintiff as a patient for her

12

back pain, migraine headaches, and tension headaches. *See id.* (failure to properly apply treating physician rule "ordinarily requires remand to the ALJ for consideration of the improperly excluded evidence, at least where the unconsidered evidence is significantly more favorable to the claimant than the evidence considered").

### 2. Dr. Persaud's Opinion

The ALJ assigned "great weight" to the report of consultative examiner Dr. Persaud, who opined, *inter alia*, that Plaintiff would have no restrictions for sitting, standing, and walking, but "moderate restriction for walking on uneven terrain and up inclines, ramps, and stairs;" "moderate restriction for squatting, kneeling, and crawling;" and "moderate restriction for bending, twisting, and turning." (T.24). Plaintiff argues that the ALJ's weighing of Dr. Persaud's opinion is not consistent with the RFC because the ALJ did not take into account these nonexertional restrictions assigned by Dr. Persaud. Because the Court is remanding this matter for a new step-two severity determination and a re-weighing of Dr. Alves' treating source opinion, which conflicts with Dr. Persaud's opinion as far as Plaintiff's limitations in sitting, standing, and walking, the ALJ necessarily will have to re-evaluate Dr. Persaud's opinion in light of these new findings. Therefore, the Court need not determine this issue at the present time.

13

### C. The ALJ's Step Five Finding

Plaintiff also argues that the ALJ erred at step five because the ALJ used the Medical-Vocational Guidelines rather than a vocational expert to conclude there were significant jobs in the national economy Plaintiff could perform. (Docket No. 9 at 16).

At step five the ALJ found that "[b]ased on a residual functional capacity for the full range of sedentary work, considering the claimant's age, education, and work experience, a finding of "not disabled" is directed by Medical-Vocational Rule 201.25. (T.26). The ALJ also found, without elaboration, that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." *Id.* The ALJ did not offer any explanation as to why a vocational expert was unnecessary in light of the record. The Commissioner contends that the ALJ correctly used the Medical-Vocational Guidelines since Plaintiff failed to demonstrate any nonexertional limitations that resulted in a significant loss of her capacity to perform sedentary work. (Docket No. 12 at 17). Since the basis for this Court's remand essentially will require the Commissioner to perform a new sequential evaluation, it would be premature for the Court to address Plaintiff's step-five argument at this juncture. If, after performing a new step two analysis and re-weighing the medical opinion evidence, the ALJ finds that Plaintiff has nonexertional limitations that "'significantly limit the range of work permitted by [her] exertional limitations,' the ALJ is required to consult

14

with a vocational expert." *Zabala*, 595 F.3d at 410 (quotation omitted); *see also, e.g., Selian v. Astrue*, 708 F.3d 409, 421 (2d Cir. 2013) ("[T]he ALJ cannot rely on the Grids if a non-exertional impairment has any more than a 'negligible' impact on a claimant's ability to perform the full range of work, and instead must obtain the testimony of a vocational expert.").

## VI. Conclusion

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Docket No. 9) is granted to the extent that the Commissioner's decision is reversed, and the matter is remanded to for further administrative proceedings consistent with this Decision and Order. The Commissioner's motion for judgment on the pleadings (Docket No. 12) is denied. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**S/Michael A. Telesca**

HON. MICHAEL A. TELESCA
United States District Judge

Dated: November 2, 2017
Rochester, New York.